# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MATTHEW WERNER, *individually and on behalf of all others similarly situated*,<br><br>    Plaintiffs,<br><br>v.<br><br>MONDELEZ INTERNATIONAL, INC., a Virginia corporation, MONDELEZ GLOBAL, LLC, a Delaware limited liability company, AND NABISCO, INC., a New Jersey corporation,<br><br>    Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT FOR DAMAGES**<br><br><u>**CLASS ACTION**</u><br><br><u>**DEMAND FOR JURY TRIAL**</u> |

Plaintiff Matthew Werner brings this putative class action against Mondelez International, Inc., Mondelez Global, LLC and Nabisco, Inc. (collectively, "Defendants" or "MDLZ"), individually and on behalf of all others similarly situated, and alleges the following.

## I

## INTRODUCTION

1.  This case concerns MDLZ's representation that Wheat Thins crackers are **"100% WHOLE GRAIN"**, meaning that *all* (or *100%*) of the grain ingredients in Wheat Thins are whole grain ingredients. They aren't.

2.  One of the primary grain ingredients in Wheat Thins crackers is cornstarch, which is a refined grain. By definition, refined grains are not and cannot be whole grains. Thus, MDLZ's representation that all (or 100%) of the grain ingredients in Wheat Thins are "whole grain" is patently false and utterly misleading.

///

*Figure 1 – Examples of Packaging Prominently Representing
Wheat Thins Crackers as "100% Whole Grain"*

  

## II

## 100% WHOLE GRAIN IS A MATERIAL REPRESENTATION

3. The representation that Wheat Thins crackers are "100% Whole Grain" is a pillar of the Wheat Thins brand. The representation is prominently displayed on the front, side and back panel of Wheat Thins packages in large, bold, colorful font. The representation that Wheat Thins are "100% Whole Grain" crackers is uniform across MDLZ's marketing and labeling for the Wheat Thins product line.

///

*Figure 2 – Example of "100% Whole Grain" Misrepresentation
Across Wheat Thins Product Line*

  

4. "100% WHOLE GRAIN" is a key differentiator that gives MDLZ a unique position in the cracker and snack product market. This representation increases sales and induces consumers to purchase Wheat Thins and pay more than they otherwise would for the products.

III

**SOME GRAIN INGREDIENTS IN WHEAT THINS ARE REFINED GRAINS, NOT WHOLE GRAINS**

5. There are three types of grain ingredients: whole, refined, and enriched.

a. ***Whole grains.*** All grains begin as whole grains. A whole grain is a kernel comprised of three anatomical components – the germ, the bran and the endosperm. The bran and germ are what offer important antioxidants and good sources of fiber, B vitamins, vitamin E, magnesium, iron, zinc, and protein, and healthy fats. All three primary components of a grain must be present in their original proportions to qualify as a whole grain ingredient.

b. ***Refined grains.*** Refined grains are processed to remove the "germ" and the "bran" components of the grain. When the bran and the germ are removed from the grain during refining processes, the grain is no longer considered "whole." Moreover, roughly 25% of the protein naturally occurring in grain is reduced during the refining process, and the grain is stripped of important nutrients.

2

    c. ***Enriched grains.*** Enriched grains add nutrients back into the refined grain. However, not even half of the nutrients removed during the refining process are added back into an enriched grain. The nutrients that are added back in are added in different proportions than would be present in a whole grain.

6. MDLZ itself recognizes the importance of whole grains when compared to refined grains. MDLZ has publicly explained that whole grains are superior because they pack in more vitamins, minerals, fiber and protein than refined grains, which is important to consumers.

7. MDLZ has also recognized that because of the benefits of whole grains over refined or enriched grains, healthcare experts and professionals around the globe are advocating that consumers incorporate whole grains in their daily diet.

8. MDLZ has succeeded in its focus to capitalize on the benefits of "100% WHOLE GRAIN" when advertising, marketing and labeling Wheat Thins products to its consumers.

## IV

## MDLZ'S REPRESENTATION "100% WHOLE GRAIN" ON WHEAT THINS IS FALSE AND MISLEADING

9. Unfortunately, MDLZ has used the representation "100% WHOLE GRAIN" deceptively and has risen to the top of cracker and snack product market through this deceit. MDLZ's representations that Wheat Thins are "100% WHOLE GRAIN" is false. The grain ingredients in MDLZ's products are <u>not</u> *all* (or 100%) whole grains.

10. A prominent grain ingredient in Wheat Thins is cornstarch.

11. Cornstarch is often listed as one of the top ingredients in the Wheat Thins product formula. Cornstarch is not, however, a whole grain. Instead, cornstarch is a refined grain.

12. Corn kernels are whole grains. Cornstarch is made from only the endosperm of the corn kernel. The whole grain corn kernels are first refined to remove the germ and the bran part of the grain. Using only the endosperm of the grain, starch is extracted and dried to form a fine white powder. This is cornstarch.

3

13. Because cornstarch has been refined, it is not a whole grain under any definition or reasonable understanding of the term. Rather, it is a refined grain. Thus, MDLZ's representation that all (or 100%) of the grain ingredients in Wheat Thins are whole grains is false.

14. Plaintiff and the reasonable consumer expects that a product branded "100% WHOLE GRAIN" would in fact contain the characteristics and qualities as packaged, labeled, marketed and advertised and that ***all of the grain ingredients* (100% of them)** would be whole grains. This means that no grain ingredient in the product would be refined or enriched.

15. This understanding of the phrase "100% WHOLE GRAIN" is common sense. The basic definition of 100 percent (100%) is "completely, entirely."[1] Thus, the general understanding of the phrase "100% WHOLE GRAIN" is that all grain ingredients in Wheat Thins consist *entirely or completely* of whole grains – <u>not</u> that *some* grain ingredients are whole grains and *some* grain ingredients are not.

16. MDLZ's use of "100% WHOLE GRAIN" can only be reasonably interpreted to refer to 100% (all of) the grain ingredients in the product. This understanding is consistent with guidance issued by the FDA and the position advocated by the Whole Grains Council.

17. FDA guidance provides that "products labeled with '100 percent whole grain' not contain grain ingredients other than those the agency considers to be whole grains."[2]

18. The Whole Grains Council is a nonprofit consumer advocacy group with a mission to educate consumers about the definition of "whole grain" and whole grain health benefits.[3]

19. The Whole Grains Council has three different "stamps" that make it easy for consumers to identify the existence of whole grains in a product: the 100% Stamp, the 50%+ Stamp, and the Basic Stamp. The Whole Grains Council utilizes the "100% Stamp" to indicate

---

[1] *https://www.merriam-webster.com/dictionary/100%20percent* (last visited September 9, 2024).
[2] FDA Draft Guidance for Industry: Whole Grain Label Statements (February 2006), *available at* https://www.fda.gov/regulatory-information/search-fda-guidance-documents/draft-guidance-industry-and-fda-staff-whole-grain-label-statements (last visited September 9, 2024).
[3] *https://wholegrainscouncil.org/about-us* (last visited September 9, 2024).

for a given product that "**all its grain ingredients are whole grain**." (Emphasis added)[4]  This is the same, common-sense definition of 100% Whole Grain applicable here.

20. In sum, MDLZ's representation that Wheat Thins are "100% WHOLE GRAIN" is false and misleading:

*A central message is that Wheat Thins are **"100% WHOLE GRAIN"***



*This representation means that **all grain ingredients** (100% of them) are whole grains*



*A prominent grain ingredient Wheat Thins is **Cornstarch***



*Cornstarch is a **refined grain***



*Thus, **NOT 100%** of the grain ingredients in Wheat Thins are whole grains*



*Therefore, MDLZ's representation that Wheat Thins are **"100% WHOLE GRAIN"***

*is false and misleading*

21. Self-declaring itself as the leading player in the global snack arena, at all times relevant, MDLZ knew, or should have known, the fact that the inclusion of cornstarch in Wheat Thins made the representation "100% WHOLE GRAIN" false and misleading, but it disregarded this knowledge in order to continue its deception and reap bigger profits.

22. Plaintiff and other consumers have reasonably relied upon MDLZ's deceptive labeling of Wheat Thins as "100% WHOLE GRAIN" in deciding to purchase MDLZ's

---

[4] *https://wholegrainscouncil.org/whole-grain-stamp* (last visited September 9, 2024).

products. If Plaintiff and other consumers had known the representation was false, they would not have purchased MDLZ's products or, alternatively, would have paid less for them. Therefore, Plaintiff and other consumers similarly situated have suffered injury-in-fact as a result of MDLZ's deceptive, false and misleading practice.

23. MDLZ's false, misleading, and deceptive practices as alleged herein are likely to continue to deceive and mislead reasonable consumers and the general public, as they have already deceived and misled Plaintiff and members of the Class.

24. As a result of Defendants' false, misleading, and deceptive representations as alleged herein, Defendants injured Plaintiff and members of the putative class ("Class"), in that Plaintiff and members of the Class:

    a. Paid a sum of money for Wheat Thins that did not have the characteristics or qualities they were represented and promised to have;

    b. Were deprived of the benefit of the bargain because the Wheat Thins products they purchased were different from what Defendants warranted;

    c. Were deprived the benefit of the bargain because the Wheat Thins products they purchased had less value than what Defendants represented;

    d. Were denied the benefit of truthful food labels.

## V

## THE PARTIES

### *Plaintiff Matthew Werner*

25. Plaintiff Matthew Werner is, and at all relevant times alleged herein was, a resident of New York, New York, and over the age of eighteen (18) years. Over the past several years, Mr. Werner purchased Original Wheat Thins approximately three to four times each year in and around grocery stores in New York, New York, including Key Foods.

26. Each time Mr. Werner purchased Wheat Thins, he was exposed to, read, and relied upon the representation that Wheat Thins were "100% WHOLE GRAIN," which was prominently displayed on the packages of the products he purchased. Based upon this representation, Mr.

Werner reasonably expected that *all* of the grain ingredients (100% of them) in Wheat Thins were whole grains, not refined or enriched grains. Mr. Werner reasonably relied on MDLZ's representation when making the decision to purchase Wheat Thins, and he was actually deceived because the products he purchased contained cornstarch, which is a refined grain. At the time of his purchases, Mr. Werner did not know that cornstarch was a refined grain ingredient in Wheat Thins. As a result of MDLZ's actions, Mr. Werner lost money and suffered injury in fact.

27. At the time of each purchase, Plaintiff reasonably believed that MDLZ's products did in fact have the claimed characteristics as labeled and advertised.

28. Plaintiff relied on the misrepresentation alleged herein in making his decision to purchase Wheat Thins and he would not have purchased Wheat Thins if he had known they were not "100% WHOLE GRAIN." Plaintiff was injured in fact and lost money as a result of MDLZ's improper conduct.

29. Alternatively, Plaintiff would not have paid as much as he did for Wheat Thins if he had known they were not "100% WHOLE GRAIN." Plaintiff was injured in fact and lost money as a result of MDLZ's deceptive conduct.

30. Therefore, Plaintiff has suffered injury in fact and has standing to represent all other consumers similarly situated that reside in New York that purchased sufficiently similar Wheat Thins products that are labeled "100% WHOLE GRAIN," but contain refined grain ingredients, such as cornstarch. The below list of products (in all sizes) are the Wheat Thins products at issue in this case:

- Original Wheat Thins
- Reduced Fat Wheat Thins
- Sundried Tomato & Basil Wheat Thins
- Big Wheat Thins
- Ranch Wheat Thins
- Hint of Salt Wheat Thins
- Cracked Pepper & Olive Oil Wheat Thins

31. Each of these Wheat Thins products are sufficiently similar to the Wheat Thins products that Mr. Werner purchased. Each product is a cracker and snack product. They are all comprised of the same primary ingredients and differ only in flavor and related sub-ingredients. Importantly, MDLZ makes the same uniform "100% WHOLE GRAIN" misrepresentation on every single one of these Wheat Thins products. As a result, all Wheat Thins products at issue in this case uniformly suffer from the same misrepresentation that Wheat Thins are 100% WHOLE GRAIN, when in fact this representation is false and misleading because the products all contain the refined grains, including cornstarch.

### *Defendants MDLZ*

32. Plaintiff is informed and, on that basis, believes that Defendant Mondelez International, Inc. is a Virginia corporation with its headquarters in Chicago, Illinois. Mondelez International, Inc. is the parent company of Nabisco, the brand under which Wheat Thins products are sold. Wheat Thins are distributed by Mondelez Global, LLC, also a wholly-owned subsidiary of Mondelez International, Inc. Collectively, these Defendants are referred to as "MDLZ."

33. MDLZ markets and sells Wheat Thins throughout the United States, including sales in New York.

34. At all times relevant herein, MDLZ and its subsidiaries, parents, affiliates, and other related entities, as well as their respective employees, were the agents, servants and employees of MDLZ, and at all times relevant herein, each were acting within the course and scope of that agency and employment.

35. Whenever reference in this Class Action Complaint is made to any act by MDLZ, including its subsidiaries, affiliates, distributors, retailers, and other related entities, such allegation shall be deemed to mean that the principals, officers, directors, employees, agents, and/or representatives of MDLZ committed, knew of, performed, authorized, ratified, and/or directed that act or transaction on behalf of MDLZ while actively engaged in the scope of their duties.

## VI

## **JURISDICTION AND VENUE**

36. This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because this is a class action in which: (1) there are over 100 members in the proposed class; (2) members of the proposed class have a different citizenship from MDLZ; and (3) the claims of the proposed class members exceed $5,000,000 in the aggregate, exclusive of interests and costs.

37. Alternatively, this Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because the action is between citizens of different states and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

38. This Court has personal jurisdiction because MDLZ's contacts with the forum are continuous and substantial, and Defendants intentionally availed themselves of the markets within New York through marketing and sales of Wheat Thins to consumers, including Plaintiff. Moreover, MDLZ directed its advertising and marketing efforts to New York.

39. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because MDLZ engages in continuous and systematic business activities within the State of New York. Moreover, venue is proper because a substantial portion of the underlying transactions and events complained of herein occurred and affected entities and persons, including Plaintiff, in this judicial district.  MDLZ has received substantial compensation from such transactions and business activity in this judicial district, including as the result of thousands of purchases of Wheat Thins products.  Further, MDLZ's Wheat Thins products inhabit and/or may be found in this judicial district, and the interstate trade and commerce described herein is and has been carried out in part within this judicial district.

## VII

## **CLASS ALLEGATIONS**

40. Plaintiff brings this action as a class action pursuant to Federal Rules of Civil Procedure 23(b)(3) on behalf of the following New York class:

9

> All persons that reside in New York who purchased Wheat Thins bearing the representation "100% WHOLE GRAIN" for personal use, when in fact those products contained refined grain(s), including cornstarch, from September 13, 2021 until the date the notice is disseminated.

41. Excluded from the Class are: (i) Defendants and its officers, directors, and employees; (ii) any person who files a valid and timely request for exclusion; and (iii) judicial officers and their immediate family members and associated court staff assigned to the case.

42. Plaintiff reserves the right to amend or otherwise alter the class definition presented to the Court at the appropriate time, or to propose or eliminate sub-classes, in response to facts learned through discovery, legal arguments advanced by Defendants, or otherwise.

43. This action is properly maintainable as a class action pursuant to Federal Rule of Civil Procedure 23 for the reasons set forth below.

44. **Numerosity—Federal Rule of Civil Procedure 23(a)(1).** Plaintiff is informed and believes, and on that basis alleges, that members of the class are so numerous that joinder of all members is impracticable. Upon information and belief, the Class consists of potentially millions of consumers dispersed throughout the State of New Yor. Accordingly, it would be impracticable to join all individual members of the Class before the Court.

45. **Commonality and Predominance—Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).** There are numerous and substantial questions of law or fact common to all members of the Class that predominate over any individual issues. Included within the common questions of law or fact are:

    a. Whether the representation "100% WHOLE GRAIN" is false and misleading given the inclusion of the refined grain cornstarch in the products;

    b. Whether Defendants made material representations in the packaging, marketing and sale of Wheat Thins regarding "100% WHOLE GRAIN";

    c. Whether Defendants engaged in unlawful, unfair or deceptive business

      practices by advertising and selling Wheat Thins as "100% WHOLE GRAIN";

  d. Whether Defendants violated the applicable consumer protection state statutes;

  e. Whether Plaintiff and the Class members have sustained damage as a result of Defendants' unlawful conduct; and

  f. The proper measure of damages sustained by Plaintiff and Class members.

  46. **Typicality—Federal Rule of Civil Procedure 23(a)(3).** Plaintiff's claims are typical of the claims of the members of the Class he seeks to represent because Plaintiff, like the Class members, purchased Defendants' falsely packaged, labeled and advertised Wheat Thins products and Plaintiff and the class members were exposed to the same misrepresentation that the products contain "100% WHOLE GRAIN" when a primary grain ingredient in the products is actually a refined grain. Thus, Plaintiff's claims arise from the same events, practices, and/or course of conduct that gives rise to the claims of the other class members. Defendant's unlawful, unfair and/or fraudulent actions concern the same business practices described herein irrespective of where they occurred or were experienced. Plaintiff and the Class members sustained similar injuries arising out of Defendants' conduct. Plaintiff's and Class members' claims arise from the same practices and course of conduct and are based on the same legal theories.

  47. **Adequacy of Representation—Federal Rule of Civil Procedure 23(a)(4).** Plaintiff is an adequate representative of the Class they seek to represent because his interests do not conflict with the interests of the members of the Class he seeks to represent. Plaintiff will fairly and adequately protect the interests of members of the Class and have retained counsel experienced and competent in the prosecution of complex cases including complex class action questions that arise in consumer protection litigation.

  48. **Predominance and Superiority—Federal Rule of Civil Procedure 23(b)(3).** A class action is superior to other available methods for the fair and efficient adjudication of the present controversy because it will permit a large number of claims to be resolved in a single forum simultaneously, efficiently, and without the unnecessary hardship that would result from the prosecution of numerous individual actions and the duplication of discovery, effort, expense

and burden on the courts that individual actions would engender. The benefits of proceeding as a class action, including providing a method for obtaining redress for claims that would not be practical to pursue individually, are far superior than any difficulties that might be argued with regard to the management of this class action. This superiority makes class litigation superior to any other method available for the fair and efficient adjudication of these claims. Absent a class action, it would be highly unlikely that the representative Plaintiff or any other members of the Class would be able to protect their own interests because the cost of litigation through individual lawsuits might exceed expected recovery.

49. Because Plaintiff seeks relief for all members of the Class, the prosecution of separate actions by individual members would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for Defendant.

50. The prerequisites to maintaining a class action pursuant to Fed. R. Civ. P. 23(b)(3) are also met as questions of law or fact common to Class members predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

## VII

## **CAUSES OF ACTION**

### COUNT I

**New York Consumer Protection from Deceptive Acts and Practices**

**(N.Y. Gen. Bus. Law § 349)**

51. Plaintiff re-alleges and incorporates by reference all allegations set forth in the proceeding paragraphs, as if fully set forth verbatim herein.

52. Plaintiff is a consumer of Defendants' goods and brings this Count individually and on behalf of all other New York consumers.

53. New York prohibits "deceptive acts or practices in the conduct of any business, trade or commerce." "Deceptive acts or practices" are those that are likely to mislead a reasonable

consumer acting reasonably under the circumstances.

54. Defendants' conduct as alleged herein constitutes deceptive acts or practices under N.Y. Gen. Bus. Law § 349. MDLZ's conduct was materially misleading to Plaintiff and the class because they fundamentally misrepresent the nature of ingredients in Wheat Thins to induce consumers to purchase the crackers.

55. During the class period, MDLZ carried out a plan, scheme and course of conduct which was consumer oriented and directed at consumers. The injuries to Plaintiff and the Class members were foreseeable to MDLZ.

56. Defendants' conduct also violated N.Y. Agric. & Mkts. Law § 201.

57. Defendants intended that Plaintiff and the Class members would rely on the unlawful, deceptive and/or unfair business acts and practices alleged herein. In the alternative, Defendants knew or should have known that Wheat Thins did not have the claimed characteristics as alleged herein because Defendants manufactured, marketed and sold the MDLZ products without those claimed characteristics. Defendants knew or should have known that their representations about the MDLZ products as described herein are deceptive and that these statements or misleading packaging would be relied upon by Plaintiff and the members of the Class.

58. Defendants' actions as described herein were done willfully and knowingly with conscious disregard of Plaintiff's and the Class's rights and were wanton and malicious.

59. Plaintiff and those similarly situated relied to their detriment on Defendants' unfair, deceptive and unlawful business practices. Had Plaintiff and those similarly situated been adequately informed and not deceived by Defendants, they would have acted differently by not purchasing (or paying less for) Defendants' Wheat Thins products.

60. As a direct and proximate cause of Defendants' conduct, Plaintiff and members of the class have been aggrieved as alleged herein. They were deceived by Defendants' conduct and would not have purchased the products or would have paid less for them if Defendants had disclosed the truth about the products. Plaintiff is therefore entitled to all available remedies

under N.Y. Gen. Bus. Law § 349(h), including actual damages sustained by Plaintiff and the Class to the maximum extent allowable under N.Y. Gen. Bus. L. § 349, which includes actual damages or fifty dollars ($50) per violation, whichever is greater, or both. Plaintiff and the Class are also entitled to civil penalties and any other relief this Court deems proper.

61. Plaintiff shall also be entitled to reasonable attorneys' fees and costs in pursuing this action. N.Y. Gen. Bus. Law § 349(h).

## COUNT II

## New York Consumer Protection from False Advertising

## (N.Y. Gen. Bus. Law § 350)

62. Plaintiff re-alleges and incorporates by reference all allegations set forth in the proceeding paragraphs, as if fully set forth verbatim herein.

63. MDLZ has engaged and is engaging in consumer-oriented conduct which is deceptive or misleading in a material way, constituting false advertising in the conduct of any business, trade, or commerce, in violation of N.Y. Gen. Bus. L. § 350.

64. N.Y. Gen. Bus. L. § 350 defines "false advertising" as "advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect." The foregoing acts and practices were directed at consumers. G.B.L. § 350-a.

65. The foregoing false advertisements are misleading in a material way because they fundamentally misrepresent the nature of ingredients in Wheat Thins to induce consumers to purchase the crackers.

66. As a result of MDLZ's false advertising, Plaintiff and the Class have suffered and continue to suffer substantial injury, including damages, which would not have occurred but for the false and deceptive advertising, and which will continue to occur.

67. Plaintiff seeks to recover actual damages on behalf of himself and the Class or five hundred dollars ($500) per violation, whichever is greater, or both, and reasonable attorney fees.

## PRAYER

**WHEREFORE,** Plaintiff, individually, and on behalf of all others similarly situated, pray for relief pursuant to each cause of action set forth in this Class Action Complaint, as follows:

A.      Declaring that this action can be maintained as a class action, certifying the Class as requested herein, designating Plaintiff as Class Representative and appointing the undersigned counsel as Class Counsel;

B.      Ordering actual and compensatory damages for Plaintiff and the Class;

C.      Ordering statutory damages allowable under N.Y. Gen. Bus. L. §§ 349, 350 and any other statute as applicable;

D.      Ordering statutory penalties for all Counts for which they are available;

E.      Ordering Defendants to pay attorneys' fees and litigation costs;

F.      Awarding punitive, exemplary and/or trebling damages;

G.      Ordering Defendants to pay both pre- and post-judgment interest on any amounts awarded; and

H.      Ordering such other and further relief as may be just and proper.

## JURY TRIAL DEMANDED

Plaintiff demands a jury trial on all causes of action and issues so triable.

Dated:  September 13, 2024

/s/  *Jason Koral*
JASON KORAL
jkoral@presskoral.com
**PRESS KORAL LLP**
641 Lexington, Thirteenth Floor
New York, NY 10022
917-881-1347

*Pro hac vice to be sought for:*
DAVE FOX (CA Bar No. 254651)
Dave@FoxLawAPC.com
JOANNA FOX (CA Bar No. 272593)
Joanna@FoxLawAPC.com
COURTNEY VASQUEZ (CA Bar No. 267081)
Courtney@FoxLawAPC.com
**FOX LAW, APC**
201 Lomas Santa Fe Drive, Suite 420

Solana Beach, CA 92075
Tel: 858-256-7616
Fax: 858-256-7618

*Attorneys for Plaintiff and the Proposed Class*